## UNITED STATES BANKRUPTCY COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**SHAMUS HOLDINGS, LLC,**
    Debtor

Chapter 11
Case No. 07-14572-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

**SHAMUS HOLDINGS, LLC,**
    Plaintiff
v.
**LBM FINANCIAL, LLC,**
    Defendant

Adv. P. No. 08-1030

~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

### I. INTRODUCTION

The matters before the Court are the Motion of Shamus Holdings, LLC (the "Debtor") for Summary Judgment and the Opposition to the Motion filed by LBM Financial, LLC ("LBM"). The Court heard the matters on June 22, 2009 and took them under advisement. The issue presented is whether LBM's mortgage on the Debtor's property located at Unit C-1 Foundry Condominium, 314 West Second Street, South Boston, Massachusetts (the "Foundry property") must be considered discharged under

Mass. Gen. Laws ch. 260, § 33, the Massachusetts Obsolete Mortgage Statute.

## II. FACTS

The Court incorporates by reference its prior decision in the adversary proceeding and will not repeat the numerous and contentious factual allegations made in the Debtor's First Amended Objection to Claim, except to the extent necessary for determination of the limited issue articulated above. *See* Shamus Holdings, LLC v. LBM Fin., LLC (In re Shamus Holdings, LLC), No. 08-1030, 2009 WL 3191314 (Bankr. D. Mass. Aug. 6, 2008).

The Debtor filed a voluntary Chapter 11 petition on July 25, 2007 to forestall a foreclosure sale scheduled by LBM. Less than one week before, on July 19, 2007, the Debtor was organized as a Massachusetts limited liability company. On that same day, Steven A. Ross ("Ross"), Trustee of 14 Beach Street Realty Trust (the "Beach Street Realty Trust"), for nominal consideration of $1, conveyed the Foundry property to the Debtor.

The Foundry property was originally acquired by Foundry Realty, LLC ("Foundry Realty") from Faneuil Investors Group Limited Partnership ("FIG") in May of 2002. Foundry Realty secured a portion of the purchase price with a first mortgage to FIG. When its mortgage matured, FIG threatened foreclosure proceedings. In November of 2003, Charles J. Houseman, Trustee of Pine Banks Nominee Trustee, agreed to refinance the FIG note and mortgage.

The Debtor has alleged, and it is undisputed, that on May 9, 2003, prior to the closing of a loan from General Bank to 655 Corporation, an affiliate of Foundry Realty, and the execution of a promissory note by 655 Corporation to LBM with a September 9 2003

2

maturity date (which was later extended by LBM to April 9, 2004), Foundry Realty

executed a guaranty of 655 Corporations's note, which it secured with a mortgage on the

Foundry property - - the mortgage which the Debtor now challenges. That mortgage,

which was executed on May 9, 2003 and recorded on May 14, 2003 had a "Term" of four

months. It was to be subordinated to the Pine Banks mortgage, but LBM did not execute

a subordination agreement. Pine Banks eventually foreclosed its mortgage and conveyed

the Foundry property to Ross, as Trustee of the Beach Street Realty Trust, by way of a

foreclosure deed dated September 14, 2005.

In summary, Foundry Realty, the Debtor's predecessor in title, granted LBM a

mortgage on the Foundry property on May 9, 2003 to secure a guaranty of what the Debtor

has alleged was a sham loan made by LBM to 655 Corporation in the sum of $1,200,000.

In contrast to the mortgage instrument, which has a stated term of four months, *see* Article

I of the Mortgage and Security Agreement at page 1, the guaranty does not specify a term

or a maturity date.

LBM initiated foreclosure proceedings with respect to the mortgage on the Foundry

property and scheduled an auction for July 25, 2007. Additionally, it filed a proof of claim

in the Debtor's Chapter 11 case on September 24, 2007 in the sum of $4,154,610.92.

According to Robert L. Donovan, an attorney specializing in title examinations,

whose affidavit was submitted by the Debtor in support of its Motion for Summary

Judgment, LBM made no recording with the Suffolk Registry of Deeds pursuant to the

Obsolete Mortgage Statute between May 1, 2003 and February 19, 2009. On April 8, 2009,

3

however, LBM did record an "Affidavit Pursuant to M.G.L. c. 260, §§ 33 and 34a" with the

Suffolk Registry of Deeds. That recordation was within five years of the *extended* maturity

date of the LBM loan to 655 Corporation, namely April 9, 2004, but not within five years

of the original maturation date of September 9, 2003. LBM recorded an Affidavit with the

Suffolk Registry of Deeds while the Debtor's Chapter 11 case was pending and without

obtaining relief from the automatic stay. The Affidavit, which was executed by Marcello

Mallegni as Managing Partner of LBM, provides:

> . . . The Note had an original maturity date of September 9, 2003. The
> maturity date of the Note was subsequently extended to April 9, 2004 as
> reflected in the Allonge and Amendment to Mortgage annexed hereto as
> Exhibit A.

The Amendment to Mortgage bears no evidence that it was recorded in the Suffolk

Registry of Deeds. It provides, in relevant part, that "[t]he definition of "Term" which

appears on the first page of the Mortgage is changed to April 9, 2004."

## III. SUMMARY JUDGMENT STANDARD

The standard for summary judgment is well-known and needs little explication here

where the material facts are not in dispute.

> It is apodictic that summary judgment should be bestowed only when no
> genuine issue of material fact exists and the movant has successfully
> demonstrated an entitlement to judgment as a matter of law. *See* Fed.R.Civ.P.
> 56(c). As to issues on which the movant, at trial, would be obliged to carry
> the burden of proof, he initially must proffer materials of evidentiary or
> quasi-evidentiary quality-say, affidavits or depositions-that support his
> position. This means, of course, that summary judgment is inappropriate if
> inferences are necessary for the judgment and those inferences are not
> mandated by the record.

Desmond v. Varrasso, 37 F.3d 760, 763 (1st Cir. 1994)(citations and footnote omitted)).

## IV. DISCUSSION

The Debtor primarily relies upon the express provisions of the Obsolete Mortgage

Statute. It provides:

> *A power of sale in any mortgage of real estate shall not be exercised* and an entry
> shall not be made nor possession taken nor proceeding begun for foreclosure
> of any such mortgage after the expiration of, in the case of a mortgage in
> which no term of the mortgage is stated, 35 years from the recording of the
> mortgage or, *in the case of a mortgage in which the term or maturity date of the
> mortgage is stated, 5 years from the expiration of the term or from the maturity date,
> unless an extension of the mortgage, or an acknowledgment or affidavit that the
> mortgage is not satisfied, is recorded before the expiration of such period.* In case an
> extension of the mortgage or the acknowledgment or affidavit is so recorded,
> the period shall continue until 5 years shall have elapsed during which there
> is not recorded any further extension of the mortgage or acknowledgment
> or affidavit that the mortgage is not satisfied. The period shall not be
> extended by reason of non-residence or disability of any person interested
> in the mortgage or the real estate, or by any partial payment, agreement,
> extension, acknowledgment, affidavit or other action not meeting the
> requirements of this section and sections 34 and 35. *Upon the expiration of the
> period provided herein, the mortgage shall be considered discharged for all purposes
> without the necessity of further action by the owner of the equity of redemption or
> any other persons having an interest in the mortgaged property* and, in the case of
> registered land, upon the payment of the fee for the recording of a discharge,
> the mortgage shall be marked as discharged on the relevant memorandum
> of encumbrances in the same manner as for any other mortgage duly
> discharged.

Mass. Gen. Laws ch. 260, § 33 (emphasis added). Unless the automatic stay or some other

provision of the Bankruptcy Code excuses compliance with the terms of the Obsolete

Mortgage Statute, its plain language required LBM to record with the Suffolk Registry of

Deeds an extension of the mortgage, or an acknowledgment or affidavit that the mortgage

had not been satisfied before September 9, 2008. It did not do so.

This Court need not write on a blank slate. Judge Rosenthal recently had occasion

5

to examine the Obsolete Mortgage Statute in a case with facts similar to those present here. Indeed, he analyzed a mortgage granted by the debtor to LBM.

In In re 201 Forest Street, LLC, 404 B.R. 6 (Bankr. D. Mass. 2009), the debtor requested an order discharging a mortgage in favor of LBM. LBM had, on January 16, 2009, recorded an affidavit purporting to extend the one year term of a mortgage dated December 4, 2002.[1] The court stated that "a straightforward application of the Obsolete Mortgages Statute compels the Court to initially conclude that the Mortgage has been "discharged for all purposes" by operation of law." 404 B.R. at *10. It stated:

> The language of the Obsolete Mortgages Statute is unambiguous and contains no exceptions. A mortgagee's actions, short of timely recording an appropriate document, are ineffective to extend an expired mortgage. Had the legislature intended the Obsolete Mortgages Statute to have a more narrow application, as LBM argues, it was certainly capable of drafting the statute accordingly. Cf. M.G.L. ch. 183, § 4 (recording statute provides that unrecorded conveyances are "not valid as against any person, except the grantor or lessor, his heirs and devisees and persons having actual notice of it . . . .") (emphasis added); M.G.L. 183, § 58 ("Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless [ inter alia ] . . . the instrument evidences a different intent by an express exception or reservation and not alone bounding by a side line.") (emphasis added); M.G.L. ch. 175, § 132 (providing that life insurance policies that have "been in force during the lifetime of the insured for a period of two years from its

---

[1] At the hearing on the Motion for Summary Judgment, counsel to the debtor, provided the court and counsel to LBM with a copy of an "Affidavit Pursuant to M G.L. c. 260 § 33 & 11 U.S.C. § 362(b)(3)" filed with the Middlesex South Registry of Deeds on January 16, 2009. That Affidavit, to which counsel to LBM did not object, provided "This affidavit is filed pursuant to and as permitted by 11 U.S.C. § 362(b)(3), within thirty (30) days after the five (5) years [sic] period provided by M.S.L. c. 260, § 33." Thus, in the Forest Street case, LBM specifically relied upon the exception to the automatic stay discussed below.

date of issue" shall be "incontestable ... except for [ inter alia ] non-payment
of premiums or violation of the conditions of the policy . . . .") (emphasis
added). Rather than including an exception or other limiting language,
however, the legislature drafted the Obsolete Mortgages Statute in a manner
which reveals that it intended the statute to uniformly apply, without
exception, when a mortgagee fails to timely record an extension,
acknowledgment or affidavit:

> A power of sale in any mortgage of real estate shall not be
> exercised . . . in the case of a mortgage in which the term or
> maturity date of the mortgage is stated, 5 years from the
> expiration of the term or from the maturity date, *unless* an
> extension of the mortgage, or an acknowledgment or affidavit
> that the mortgage is not satisfied, is recorded before the
> expiration of such period. . . . Upon the expiration of the period
> provided herein, the mortgage shall be considered discharged
> *for all purposes* . . . .

Id. at *10-11 (citing Mass. Gen. Laws ch. 260, § 33 (emphasis in original).

This Court agrees with Judge Rosenthal's cogent interpretation of the statute and

adopts it for purposes of this decision.

In the instant case, as in Forest Street, LBM makes several arguments against a

straightforward application of the Obsolete Mortgage Statute. It maintains that 11 U.S.C.

§ 108(c)[2] extends the time to enforce its mortgage, stating "§ 108(c) provides that when a

_____

[2] Section 108(c) of the Bankruptcy Code provides:

Except as provided in section 524 of this title, if applicable nonbankruptcy
law, an order entered in a nonbankruptcy proceeding, or an agreement
fixes a period for commencing or continuing a *civil action* in a court other
than a bankruptcy court on a claim against the debtor, or against an
individual with respect to which such individual is protected under
section 1201 or 1301 of this title, and such period has not expired before
the date of the filing of the petition, then such period does not expire until
the later of--

creditor is stayed from taking action against the debtor because of a bankruptcy case, the

creditor is permitted an additional thirty days after the stay is lifted to take or continue its

action against the debtor." It further maintains that "[t]he protections of § 108(c) have been

applied in a broad variety of actions to extend enforcement periods concerning mortgages,

liens and other claims against debtors protected by the automatic stay" and, citing Morton

v. Nat'l Bank of New York City v. Morton (In re Morton), 866 F.2d 561 (2d Cir. 1989), and

Spirtos v. Moreno (In re Spirtos), 221 F.3d 1079 (9th Cir. 2000), that § 108(c) "even applies

when state statutes provide avenues for extending enforcement periods that would not

violate the automatic stay."

   LBM made the same arguments and cited the same cases as in Forest Street and

Judge Rosenthal properly rejected them. The language of section 108(c) is plain. It applies

only when a nonbankruptcy law, order, or agreement fixes a period for commencing or

continuing a "civil action." Black's Law Dictionary defines a "civil action" as an "[a]ction

brought to enforce, redress, or protect private rights." Black's Law Dictionary 222 (5th ed.

1979). It defines the term action "in its usual legal sense" as "a suit brought in a court of

---

> (1) the end of such period, including any suspension of such
> period occurring on or after the commencement of the case;
> or
>
> (2) 30 days after notice of the termination or expiration of the
> stay under section 362, 922, 1201, or 1301 of this title, as the
> case may be, with respect to such claim.

11 U.S.C. § 108(c) (emphasis supplied).

law." Id. at 26. The recordation of an extension of a mortgage in the registry of deeds is not remotely the equivalent of a suit brought in a court of law.

In Forest Street, the court noted that the purpose of section 108(c) is to prevent a debtor from gaining an "unfair advantage over a claimant by . . . remain[ing] under the protection of the automatic stay until the limitation period governing the claimant's action had expired. . . ." 404 B.R. at *13-14 (citing In re Morton, 866 F.2d 561, 566 (2d Cir.1989)). It added: "To avoid this inequity, section 108(c) gives a claimant 'stayed from commencing or continuing an action against the debtor because of the bankruptcy case' 30 days after the termination or expiration of the automatic stay to commence or continue his civil action." 404 B.R. at *14 (citing Morton, 866 F.2d at 566). Focusing on the plain language of 108(c), the court added:

> Each of the cases that LBM cites are distinguishable from the instant facts. In In re Morton, 866 F.2d at 566, and In re Spirtos, 221 F.3d 1079, 1080-81 (9th Cir. 2000), the Second and Ninth Circuits held that the time to renew judgment liens on debtors' property was tolled by section 108(c) for thirty days after notice of termination of the automatic stay. However, the claimants in Morton and Spirtos had successfully prosecuted civil actions to judgment, and thus, the renewal of their judgment liens were "continuations" of "civil action[s]" within the meaning of section 108(c). Here, the requirement to file an extension, acknowledgment, or affidavit under the Obsolete Mortgages Statute is not the continuation of a civil action.

> LBM also cites In re Hunters Run Ltd. P'ship, 875 F.2d 1425, 1427 (9th Cir. 1989), and In re WorldCom, Inc., 362 B.R. 96, 108-09 (Bankr. S.D.N.Y. 2007), for the proposition that section 108(c) extends the period of time that mechanic's liens may be enforced for thirty days after notice of termination of the automatic stay. Hunters Run and WorldCom are inapposite because the applicable state statutes provided that those liens would have expired unless enforcement actions were timely filed in the appropriate courts. The debtors' bankruptcy cases stayed the claimants from initiating actions to enforce their mechanic's liens, thus implicating the policy of section 108(c).

9

Those courts explained that enforcing a lien is not "an act to maintain or continue perfection of a lien" excepted from the automatic stay. WorldCom, 362 B.R. at 108; *see also* In re Hunters Run Ltd. P'ship, 875 F.2d at 1428. Meanwhile, LBM lost its right to foreclose on the Mortgage because it failed to take necessary action which it was not stayed from taking; namely, recording an extension, acknowledgment, or affidavit. *See* In re 229 Main Street P'ship, 262 F.3d 1, 3 (1st Cir. 2001) (explaining that the automatic stay is not applicable to acts to maintain or continue perfection of liens). In short, while section 108(c) may extend the period of time to bring a foreclosure action, *see* Hunters Run, 875 F.2d at 1429, LBM no longer has the right to foreclose because it failed to take action that it was not stayed from taking, not because 201 Forest's bankruptcy case prevented it from enforcing the Mortgage. Consequently, section 108(c) is of no assistance to LBM because it has no right to commence or continue a civil action with respect to the Mortgage.

Id. at *14-15 (footnote omitted).

This Court also concludes that a careful reading of In re Morton fails to support LBM's position. In that case, applicable New York law provided that a judgment lien on real property expires after ten years unless the lienholder extends it by filing a motion in a state court with proper notice to the judgment debtor. 866 F.2d at 562. Prior to the expiration of the extension period, a bank, the holder of a judgment lien, filed an extension of its judgment lien in the New York State Supreme Court and that court extended the lien "'for as long as plaintiff is stayed by defendant Joan Morton's filing of a petition in Bankruptcy, *plus* three months after the lifting of such stay.'" Id. The validity of that order was disputed and the debtor moved in the bankruptcy court for a determination that the judgment lien had lapsed. The bankruptcy court held that "'the automatic stay in bankruptcy preserved the validity of [the bank's] lien from the date of the debtor's petition" and that the bank had no "duty to renew its lien until the debtor obtains [a]

10

discharge.'" Id. The district court affirmed.

On further appeal, the bank offered the following arguments: "(1) the automatic stay eliminated the state-law extension requirement; (2) the provisions of § 108(c) preserve the lien; (3) the lien remains valid because it was valid at the time Morton filed her petition and at the time her plan was confirmed; and (4) the bank obtained a valid extension from the state court." Id. at 563.

The Second Circuit, in addressing the bank's first argument, stated:

> The automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(a), operates only as a stay of "any act to *create, perfect, or enforce*" a lien against the property of the estate. 11 U.S.C. § 362(a)(4) (emphasis added). Significantly, the section does not explicitly prohibit acts to extend, continue, or renew otherwise valid statutory liens, nor is there any indication from the legislative history that congress intended such a result.

> Similarly, there is no indication that the state requirements at issue here place any type of burden on § 362(a) or the interests it was designed to protect. Action by a lienholder under § 5203(b) [the applicable state law] does not result in an enlargement of the lien, nor does it threaten property of the estate which would otherwise be available to general creditors. To the contrary, extension under § 5203(b) simply allows the holder of a valid lien to maintain the status quo-a policy not adverse to bankruptcy law, but rather in complete harmony with it. *See* Hunt v. Bankers Trust Co., 799 F.2d 1060 (5th Cir.1986); In re Holtkamp, 669 F.2d 505 (7th Cir.1982).

In re Morton, 866 F.2d at 565. The Second Circuit concluded that the bank "was free to make that application despite the automatic stay," although it also held "that the tolling provisions of § 108(c) apply to New York's ten-year period governing judgment liens on real property," such that the running of the period was tolled pursuant to § 108(c)(1) and (c)(2). Notably, in Morton, the applicable New York law provided that on motion of the judgment creditor and upon notice to the judgment debtor, served personally or by

registered or certified mail, "the court may order the lien of a money judgment upon real

property to be effective . . . ." N.Y. C.P.L.R. § 5203 (McKinney 1997).

In In re Spirtos, a creditor held a claim based upon a malpractice judgment. The

debtor's spouse objected to the claim on the ground that under California law it was

unenforceable because the claimant failed to renew it and the time within which the

claimant could act expired during the bankruptcy case. The Ninth Circuit, citing Morton,

confined its analysis to section 108(c) and held that the period of duration under California

law would not expire until 30 days after all the assets of the debtor's estate had been finally

distributed. It stated:

> . . . Moreno [the judgment creditor] is barred by the automatic stay from
> collecting on a judgment by attaching the debtor's assets which have become
> property of the estate. It is the creditor's inability to enforce the judgment for
> a portion of the ten-year period that keeps the period of duration open under
> section 108(c). Whether the automatic stay also precluded the creditor from
> renewing the judgment-an issue we need not decide-is beside the point.
> Morton reached the same conclusion, even though it held that section 362 did
> not bar the creditor from renewing its judgment. See Morton, 866 F.2d at
> 564-65; accord Rogers [v. Corrosion Prods., Inc.], 42 F.3d [292]at 297 [(5th Cir.
> 1995)] (analyzing section 108(c) without regard to whether section 362 stay
> barred action against debtor).

Spirtos, 221 F.2d at 1082.

In Spirtos, applicable law required the filing of an application for renewal of the

judgment, under oath, with the court in which the judgment was entered, see Cal. Civ.

Pro. §§ 683.120, 683.140, as well as service of a notice that informed the judgment debtor

of a 30-day window to move to vacate or modify the renewal. See Ca. Civ. Pro. § 683.160.

Thus, the applicable laws in both Morton and Spirtos required the commencement of a suit

12

or action in a court of law.

In view of the provisions of the applicable state laws in <u>Morton</u> and <u>Spirtos</u>, which require the filing of pleadings in state court with notice to the judgment debtor, the Court finds that the provisions of the Obsolete Mortgage Statute are readily distinguishable. Because the Massachusetts statute is concerned with consensual liens, no notice to mortgagor is required. Indeed, there is no court involvement at all. The mortgagee is only required to file in the appropriate registry of deeds *"an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied . . . before the expiration of the five year period."* Thus, the observations of the Second Circuit in <u>Morton</u> are pertinent here. Any action that LBM may have taken to avoid the ramifications of Mass. Gen. Laws ch. 260 § 33 would not result in an enlargement of the lien or threaten property of the estate which would otherwise be available to general unsecured creditors. Rather, the extension of the mortgage simply allowed LBM "to maintain the status quo-a policy not adverse to bankruptcy law, but rather in complete harmony with it." *See* <u>Morton</u>, 866 F.2d at 565. Other cases cited by LBM, including <u>Valley Transit Mix of Ruidoso, Inc. v. Miller</u>, 928 F.2d 354 (10th Cir. 1991), are distinguishable as well. For example in <u>Miller</u>, the applicable law required the commencement of "proceedings" in a court of competent jurisdiction. *See* 928 F.2d at 355.

LBM also argues that it complied with the requirements of the Obsolete Mortgage Statute to extend the time within which to enforce its rights. It points to the guaranty which contains no maturity date and the extension of the 655 Corporation loan resulting

in its maturation on April 9, 2004. As a result, in its view, its recordation of an affidavit on

April 8, 2009 (five years after the extended maturity date) satisfied the statute.

Judge Rosenthal considered and rejected LBM's argument and this Court does too,

particularly as LBM failed to introduce evidence that the Allonge and Amendment to

Mortgage were ever recorded in the Suffolk Registry of Deeds. Moreover, the Allonge and

Amendment to Mortgage were not attached to the proof of claim filed by LBM, which it

attached as an exhibit to its Opposition to the Debtor's Motion for Summary Judgment, and

would not be binding upon the Debtor as successor in title to Foundry Realty. The court

in Forest Street stated:

> The Court disagrees with LBM's argument that the maturity date of
> the note controls as the Obsolete Mortgages Statute clearly states that an
> extension, acknowledgment, or affidavit must be filed within five years from
> the expiration of "the term or maturity date of the *mortgage.*'" M.G.L. ch. 260,
> § 33 (emphasis added). Nowhere does the statute mention the term or
> maturity date of the note. The statute's utility of discharging mortgages
> automatically "without the necessity of further action," would be
> significantly frustrated if parties were permitted to corns [sic] forward with
> collateral evidence purporting to show that the term or maturity date of the
> mortgage was something other than what is set forth in the recorded
> instrument.

Id. at 12.

Finally, LBM argues that its proof of claim is sufficient to satisfy the notice

requirements of the Obsolete Mortgage Statute. It states that "Shamus, as debtor-in-

possession, is charged with notice of the LBM Mortgage as of the petition date and

therefore does not need additional notice that the mortgage remained unsatisfied." It

added that "Not only did Shamus have notice of LBM's intention to foreclose on the LBM

Mortgage prior to the time fixed for foreclosure under the Obsolete Mortgage Statute, but LBM's September 24, 2007 proof of claim included all of the information required by the Obsolete Mortgage Statute to provide creditors and interested third parties with notice that the LBM Mortgage remained unsatisfied.

The Court rejects LBM's arguments. The cases it cites, *see, inter alia,* General Elec. Co. v. Halmar Distribs., Inc. (In re Halmar Distribs., Inc.), 968 F.2d 121, 128 (1st Cir. 1992), and In re Paul, 67 B.R. 342 (Bankr. D. Mass. 1986), are distinguishable for the simple reasons that neither decision addressed the Obsolete Mortgage Statute nor the ramifications of section 362(b)(3) of the Bankruptcy Code. Moreover, both decisions concerned priority among lienholders, not the enforceability of a mortgage. Additionally, both decisions relied in part on General Elec. Credit Corp. v. Nardulli & Sons, Inc., 836 F.2d 184 (3d Cir. 1988), a case distinguished by the court in Forest Street, which observed:

> First, while the UCC was the applicable law in Nardulli, the Court is bound by the Obsolete Mortgages Statute in this matter. In Nardulli, the Third Circuit primarily based its decision on its statement that the UCC's filing requirements are only intended to protect subsequent purchasers or future creditors. Unlike the limited purpose behind the UCC's filing requirements, however, it appears that the Obsolete Mortgages Statute at issue here has a broader purpose. The statute reads that upon the expiration of certain deadlines set forth in the statute, " *the mortgage shall be considered discharged for all purposes without the necessity of further action by the owner of the equity of redemption or any other persons having an interest in the mortgaged property . . .*" M.G.L. ch. 260 § 33 (emphasis added). The Court believes that the legislature included this broad-sweeping language because it intended the Obsolete Mortgages Statute to automatically discharge mortgages after the expiration of certain deadlines irrespective of who invokes the protections of the statute. The Land Court has confirmed this interpretation as it has found for an original mortgagor on his count seeking a discharge of his mortgage brought pursuant to the Obsolete Mortgages Statute. Wolfberg v. Spitz, 2008 WL 2345016, at *2, 4 (Mass.Land Ct.2008).

15

404 B.R. at 16.  The court also reasoned that unlike the situation in <u>Nardulli</u> where the

debtor had represented that it did not contest the validity of the creditor's perfected

security interest, the debtor, challenged LBM's lien, a circumstance present in the instant

case.

In <u>In re Paul</u>, the bankruptcy court considered the effect of Mass. Gen. Laws ch. 223,

§114A, a statute with provisions similar to those found in Mass. Gen. Laws ch. 260, § 33.

Specifically, section 114A requires an attaching creditor to request the register of deeds to

extend the attachment to avoid its expiration six years after it is first recorded.  The

bankruptcy court observed:

> The problem presented in this case is analogous to the issue of whether a
> creditor's time within which to file a continuation of a financing statement
> is tolled by the automatic stay in bankruptcy (11 U.S.C. § 362). In many
> states, including Massachusetts, the question is easily resolved by the 1972
> version of U.C.C. § 9-403(2), which expressly provides that a security interest
> remains perfected during insolvency proceedings if it is perfected at the time
> of the commencement of the proceedings. This is true regardless of whether
> the secured party's perfection would lapse during the insovency [sic]
> proceedings because of the failure to file a continuation statement. *See*
> MASS.GEN.L. ch. 106, § 9-403(2).
>
> In other states, however, the predecessor of § 9-403(2) is in force. The 1962
> version of the statute does not address the effect of a bankruptcy petition on
> the secured party's obligation to file a continuation statement. Thus, secured
> creditors in some jurisdictions (and the attaching creditors here) are faced
> with a dilemma when a petition is filed a short time before their interests
> lapse. The automatic stay prevents them from taking any further action to
> perfect their lien, but the same stay may not stem the advance of time which
> threatens to extinguish the perfection of their security interests existing at the
> time of the petition.

67 B.R. at 344-45 (footnotes omitted).  The bankruptcy court, citing the policy of the

automatic stay to freeze all rights and priorities at the time of the filing of the petition and

the notice filing goals of the U.C.C., as well as In re Chaseley's Foods, Inc., 30 B.R. 452, 456-

57 (M.D. Ind. 1983), aff'd as modified, 726 F.2d 303 (7th Cir. 1983),[3] determined that filing a

continuation statement after a bankruptcy petition and further notice is unnecessary. It

stated:

> The case at bar involves creditors' claims and priorities, not a debtor's right
> to cure a default. There is no express provision in the Bankruptcy Code
> which allows a creditor to take acts in order to continue the perfection of its
> lien. In fact, § 362(a)(4) arguably forbids such acts. Bond Enterprises, Inc. v.
> Western Bank of Farmington (In re Bond Enterprises, Inc.), 54 B.R. 366,
> 368-69 (Bankr.D.N.M.1985). All of the attachments were perfected at the time
> the Debtors filed for bankruptcy on March 30, 1981. The policy of the
> automatic stay obligates this Court to put on blinders and focus on that date
> for the purpose of determining validity and priority of their lien.
>
> All state notice concerns are satisfied here. The attachments of Georgia
> Pacific and C & S Lumber were recorded in the Worcester County Register
> of Deeds pursuant to MASS.GEN.L. ch. 223, §§ 63-66. At the time of the
> petition, any creditor could search the records, find the attachments, and
> deduce that they were still valid. The March 30, 1981 petition obviated any
> need for further notice to or protection for potential creditors by vesting all
> of the Debtors' property in the bankruptcy estate. Continuation or renewal
> of any of the attachments after that time would be "futile, an idle gesture,
> [and] ceremonial in character. . . ." Chicago Gravel Co. v. Howard ( In re
> Lake County Fuel & Supply Co.), 70 F.2d 391, 392 (7th Cir.1934) (judgment
> creditor not required to preserve lien under Illinois law by executing it in
> order to avoid expiration after bankruptcy petition filed); see Limperis v. First

---

[3] The district court in Chaseley's Foods stated:

The only parties which can possibly be injured by failure to file a
continuation statement once a bankruptcy proceeding is pending are
creditors who obtain their liens after the financing statement expires.
However, because the trustee takes possession of the debtor's property
once a petition is filed, and this possession is open and notorious, these
creditors should not need the protection of a continuation statement.

United States v. Freeland ( In re Chaseley Foods, Inc.), 30 B.R. at 455.

> National Bank of Geneva ( In re Phillips Construction Co., Inc.), 579 F.2d 431
> (7th Cir.1978) (mechanic's lien did not expire after date of bankruptcy
> petition despite state statute setting time limit for pursuit of claim).

> In light of the foregoing, we conclude that the attachments of Georgia Pacific
> and C & S Lumber did not expire by operation of MASS.GEN.L. ch. 223, §
> 114A after the Debtors filed their joint petition on March 30, 1981. We now
> turn to the claims of all of the creditors to the proceeds held by the Trustee.

67 B.R. at 346-47.

The Court is not persuaded by the reasoning of the court in Paul, as the court failed

to consider the exception to the automatic stay set forth in section 362(b)(3). Moreover, the

case is factually distinguishable from the instant Chapter 11 case which involves a two-

party dispute between sophisticated entities. The Court finds, based upon the undisputed

facts, that section 362(b)(3) would have excepted the filing of an extension or affidavit with

the Suffolk Registry of Deeds from the automatic stay. Indeed, LBM admits as much. Not

only did it specifically so state in its Affidavit filed in the Forest Street case, see note 1,

supra, it filed an Affidavit with respect to the Foundry property without filing a motion for

relief from stay. The Court observes that LBM knows how to file a motion for relief from

stay,[4] and it could easily have filed an adversary proceeding or a counterclaim in the

instant proceeding to obtain a declaratory judgment that the stay did not apply.

Section 362(b) provides that the stay does not operate as to "any act to perfect or to

---

[4] The Court notes that LBM and the Debtor stipulated to the modification of the
automatic stay so that LBM could "adjourn, continue, and re-schedule" its foreclosure
of its mortgage and the public auction sale of the Foundry property. Similarly, it
entered into a Stipulation with the Debtor with respect to the provisions of section
362(d)(3).

maintain or continue the perfection of, an interest in property to the extent that the

trustee's rights and powers are subject to such perfection under section 546(b) . . or to the

extent that such act is accomplished within the period provided under section

547(e)(2)(A)." 11 U.S.C. § 362(b)(3). Section 546(b), in turn,

> allows, under certain circumstances, lien holders to perfect a lien, or to
> maintain or continue the perfection of an already perfected lien. "As this
> Circuit has recognized, the relatively narrow purpose of [the section 546(b)]
> exception is to 'protect in spite of the surprise intervention of [the]
> bankruptcy petition, those whom State law protects' by allowing them to
> perfect an interest they obtained before the bankruptcy proceedings began."
> In re Bennett Funding Group, 255 B.R. 616, 632 (N.D.N.Y.2000) (citations
> omitted). The Bankruptcy Reform Act of 1994 ("the 1994 Amendment")
> "expanded the scope of § 546(b) (which previously related only to perfection
> of an interest) to encompass an act to maintain or continue perfection of a
> security interest." Concrete Structures, Inc. v. Tidewater Crane and Rigging
> Co. (In re Concrete Structures), 261 B.R. 627, 637 (D. Va. 2001). Prior to the
> 1994 Amendment section 546(b) "did not explicitly allow an act to continue
> or maintain perfection, which caused trouble because Commercial Code
> filings may lapse, expire, or become ineffective for several reasons." Kathryn
> R. Heidt, The Effect of the 1994 Amendments on Commercial Secured
> Creditors, 69 Am. Bankr.L.J. 395, 424-425 (1995). The 1994 Amendment
> explicitly allowed for the maintenance or continuation of such perfection. Id.

In re WorldCom, Inc., 362 B.R. 96, 104 (Bankr. S.D. N.Y. 2007). The court in WorldCom

observed that "'Section 546(b)(1)(A) authorizes postpetition perfection of an interest in

property if any generally applicable law permits perfection against an entity that acquires

rights in the property before the date of perfection.'" Id. at 104 n, 10 (quoting 5 Collier on

Bankruptcy ¶ 546.03[2][a] (15th ed. rev.2006)).[5] It added: "[t]he legislative history 'explains

---

[5] Section 546 of the Bankruptcy Code provides:

(b) (1) The rights and powers of a trustee under sections 544, 545, and 549
of this title [11 U.S.C. § 544, 545, or 549] are subject to any generally

that the change to § 546(b) was intended to apply to acts necessary to maintain or continue the perfection of an interest held by a secured creditor under the Uniform Commercial Code.'" Id. at 106 (citing Concrete Structures, Inc. v. Tidewater Crane and Rigging Co. (In re Concrete Structures, Inc.), 261 B.R. 627, 638 (D. Va. 2001)). The United States Court of Appeals for the First Circuit considered the parameters of section 546(b) in In re 229 Main

---

applicable law that-

> (A) permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection; or
>
> (B) provides for the maintenance or continuation of perfection of an interest in property to be effective against an entity that acquires rights in such property before the date on which action is taken to effect such maintenance or continuation.

(2) If-

> (A) a law described in paragraph (1) requires seizure of such property or commencement of an action to accomplish such perfection, or maintenance or continuation of perfection of an interest in property; and
>
> (B) such property has not been seized or such an action has not been commenced before the date of the filing of the petition;

such interest in such property shall be perfected, or perfection of such interest shall be maintained or continued, by giving notice within the time fixed by such law for such seizure or such commencement.

11 U.S.C. § 546(b).

20

Street Ltd. P'ship, 262 F.2d 1 (1st Cir. 2001). It stated:

> For a particular creditor to reach the haven contemplated by section
> 546(b)(1)(A), three elements must coalesce: (1) the creditor must act pursuant
> to a law of general applicability; (2) that law must allow the creditor to
> perfect an interest in property; and (3) such perfection must be effective
> against previously acquired rights in the property.

Id. at 10. It would appear to this Court that LBM's obligation to timely record an extension

of the mortgage satisfies the conditions articulated by the First Circuit. In the first place,

the recordation of an extension of the mortgage would not appear to be a "transfer" subject

to avoidance. The transfer was the original grant of the mortgage to secure the guaranty.

The absence of any requirement to file a "civil action" or give notice to the property owner

lends support to this view. The recordation of an extension or affidavit merely continues

the status quo, thus no new transfer occurs. Sections 544 and 549 of the Bankruptcy Code

are not implicated to the extent that they enable the trustee (or debtor in possession) to

avoid "transfers."

Under section 544, the Debtor, as a debtor in possession, is armed with the rights

and powers of a trustee "at the commencement of the case" and would not be in a position

to avoid the duly perfected mortgage. Accordingly, the continuation of the "perfection"

of the LBM mortgage would have been effective against previously acquired rights in the

Foundry property, and section 362(b)(3) would have permitted LBM to record an extension

of the mortgage- - something that it purported to do on April 8, 2009 in any event - -

without violating the automatic stay .

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order granting the Debtor's Motion

for Summary Judgment.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 5, 2009
cc: Jeffrey D. Ganz, Esq., Charles A. Dale III, Esq., David M. Ianelli, Esq.,